IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Christopher R. Murray,** | § § § | |
| Chapter 7 Trustee, | § § | |
| v. | § § | Civil Action No.   22-01696 |
| **Wego Chemical LLC,** | § § § | |
| Defendant. | § | |

## TRUSTEE'S COMPLAINT

Christopher R. Murray, the Chapter 7 Trustee for Q'Max America Inc. ("QAI"), and Anchor Drilling Fluids USA, LLC ("Anchor"), and for the Bankruptcy Estate of Q'Max America Inc., and Anchor Drilling Fluids USA, LLC, files this Original Complaint against Defendant Wego Chemical LLC ("Wego").[1]

### SUMMARY OF COMPLAINT

1. This action seeks to avoid and recover fraudulent and preferential transfers made by Debtor QAI to Defendant Wego between May 24, 2018, and May 24, 2020 (two (2) years prior to the filing of the above-styled bankruptcy case). Debtor QAI made transfers of at least $1,489,512.00 during that time to, and for the benefit of, Defendant Wego by way of money transfers at times when Debtor QAI was insolvent. The transfers were paid pursuant to invoices issued, and for products provided, to Anchor.

---

[1] Citations to the Q'Max America, Inc. and Anchor Drilling Fluids USA, LLC's bankruptcy case, Case No. 20-60030 ("Bankruptcy Case") will be "Bankr. ECF No. __."

2. The Trustee may avoid and recover these payments as fraudulent transfers pursuant to 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code.

3. Debtor QAI had no legal obligation to make these transfers and received no benefit from making any of these transfers.

### JURISDICTION, VENUE & AND CONSTITUTIONAL AUTHORITY

4. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, and 1334.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

6. The Trustee consents to entry of a final judgment by this Court in this matter.

### PARTIES

7. Plaintiff is the duly appointed chapter 7 trustee for the Bankruptcy Estate of Debtor QAI. Plaintiff may be served with pleadings and process in this case through its undersigned counsel.

8. Defendant Wego Chemical LLC is a limited liability company organized under the laws of the State of Delaware and may be served through its registered agent National Registered Agents, Inc., 1209 Orange Street, Wilmington, Delaware 19801, or wherever it may be found.

### STATEMENT OF FACTS

9. Debtor QAI was an independent oilfield services company focused on providing drilling fluids and solids control services to national and independent oil companies. Debtor QAI was based in Houston, Texas.

10. Debtor QAI failed to make payments on debt as it became due in early 2018. Indeed, Debtor QAI was making late payments to vendors from February 2018 onward. These late payments became progressively later over time.

11. On May 24, 2020 ("Petition Date"), Debtor QAI filed a voluntary Chapter 7 petition for bankruptcy under title 11 of the Bankruptcy Code, commencing bankruptcy case number 2-60030 in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division. On the same day, Debtor Anchor filed a voluntary Chapter 7 petition commencing bankruptcy case number 20-60031 in the same court. Plaintiff was appointed as the chapter 7 trustee for both.

12. On May 27, 2020, the bankruptcies were ordered combined for joint administration.

13. Defendant Wego was engaged by Anchor to provide products and services to Anchor, none of which were ever used by, or benefited, Debtor QAI.



14. However, while Debtor QAI was struggling financially, Debtor QAI paid for the products and services ordered from Defendant Wego. In other words, Debtor QAI paid for products and services that were of no, or almost no, benefit to Debtor QAI.

15. The payments for these products and services were significant. In total, Debtor QAI paid Defendant Wego at least $1,489,512.00 for the products and services ordered by and on behalf of Anchor.

| **Payment Date** | **Payment To** | **Payment Amount** |
|---|---|---|
| 10/12/2018 | Wego | $426,600.00 |
| 12/27/2018 | Wego | $426,600.00 |
| 4/15/2019 | Wego | $170,640.00 |
| 6/14/2019 | Wego | $154,764.00 |
| 8/16/2019 | Wego | $84,660.00 |
| 8/29/2019 | Wego | $84,660.00 |
| 4/9/2020 | Wego | $37,626.67 |
| 4/17/2020 | Wego | $55,000.00 |
| 4/24/2020 | Wego | $13,961.33 |
| 5/1/2020 | Wego | $35,000.00 |
| | **Total:** | **$1,489,512.00** |

16. Because Defendant Wego was engaged by, and provided products and services to, Anchor, all payments made by Debtor QAI to Defendant Wego were improper, as Debtor QAI did not benefit from any such products or services provided by Defendant Wego.

17. Despite knowing it did not benefit from the products or services provided by Defendant Wego to Anchor, and knowing it was not obligated to proffer any payments to Defendant Wego because (1) no invoices were submitted to it, and (2) no contract between Defendant Wego and Debtor QAI existed, Debtor QAI nonetheless transferred at least $1,489,512.00 in payments to Defendant Wego, which it knew would prevent this money from going to its true creditors.

## CAUSES OF ACTION

### COUNT 1
### FRAUDULENT TRANSFERS UNDER 11 U.S.C. §§ 548 AND 550

18. Plaintiff realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

19. The Avoidable Transfers made before the Petition Date are avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) because Debtor QAI made these transfers with actual intent to hinder, delay, or defraud its creditors. Indeed, numerous badges of fraud exist.

20. First, Debtor QAI did not receive adequate consideration for the transfers. Debtor QAI did not engage Defendant Wego. Debtor QAI did not receive any products or services from Defendant Wego. And Debtor QAI did not receive any other tangible benefit from the products or services provided by Defendant Wego. Yet Debtor QAI paid the bill.

21. In addition, Debtor QAI's financial condition was deteriorating before the transfers begun. As outlined above in paragraph 10, Debtor QAI was unable to make payments on debt as it became due as early as February 2018.

22. The transfers were also constructively fraudulent because Debtor QAI received less than equivalent value. Defendant Wego provided products and services to A and Debtor QAI paid the bill. As a result, Debtor QAI could not have received equivalent value for the transfer. Only Anchor could have.

23. The Avoidable Transfers made before the Petition Date are avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B) because:

>   A. Debtor QAI made these transfers and received less than a reasonably equivalent value in exchange for such transfer or obligations, and in fact, received no value;

B. Debtor QAI was insolvent on the date each such transfer was made, or such obligation was incurred, or became insolvent as a result of such transfer or obligation; and

C. Debtor QAI was not personally liable for the debts satisfied by the Avoidable Transfers.

24. Under 11 U.S.C. § 550(a), the Trustee may recover the value of the Avoidable Transfers from "the initial transferee of such transfer of the entity for whose benefit such transfer was made." Defendant Wego was the initial transferee of the Avoidable Transfers. In the alternative, Defendant Wego as the entity for whose benefit such transfers were made. Therefore, the Trustee is entitled to avoid and recover the value of the Avoidable Transfers from Defendant Wego.

### COUNT 2
### ALTERNATIVE RELIEF: AVOIDANCE OF PREFERENCE PAYMENTS PURSUANT TO 11 U.S.C. § 547(b)

25. Plaintiff realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

26. In the event these transfers are considered debts or obligations of Debtor QAI, such transfers amounted to preference payments.

27. The payments identified in the table below ("Preference Payments") constitute transfers of an interest in property of Debtor QAI, made to or for the benefit of Defendant Wego. Specifically, Debtor QAI made payments for the benefit of Defendant Wego by way of electronic payments, as can be seen in the table below, at times when Debtor QAI was insolvent.

| Payment Date | Payment To | Payment Amount |
|---|---|---|
| 4/9/2020 | Wego | $37,626.67 |
| 4/17/2020 | Wego | $55,000.00 |
| 4/24/2020 | Wego | $13,961.33 |
| 5/1/2020 | Wego | $35,000.00 |
| | Total: | $141,588.00 |

28. Payments made in the 90 days before the Petition Date amount to $141,588.00.

29. The Trustee conducted an evaluation of the reasonably known affirmative defenses to avoidance of the Transfers under the circumstances of this case, and the Trustee determined he may avoid the transfers even after considering any potential statutory defenses under § 547(c). The Trustee reviewed the accounting records available to him and was unable to identify any new value.

30. As a result, $141,588.00 are preference payments and should be avoided.

## COUNT 3
## TEXAS UNIFORM FRAUDULENT TRANSFERS ACT

31. Plaintiff realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

32. The Avoidable Transfers are avoidable as fraudulent transfers under TEX. BUS. & COM. CODE ANN. § 24.001, *et. seq.* ("Texas Uniform Fraudulent Transfer Act" or "TUFTA"), which the Trustee incorporates pursuant to 11 U.S.C. § 544(b)(1).

33. One or more creditors exist whose claims arose before some of the Avoidable Transfers for whom the Trustee can act.

34. Debtor QAI made the Avoidable Transfers for the benefit of Anchor and/or Defendant Wego with the actual intent to hinder, delay, or defraud one or more of its true creditors. These transfers exhibit badges of fraud. The Trustee incorporates by reference the facts set forth in paragraphs 13-17, *supra*, setting forth the facts supporting a finding that Debtor QAI had actual intent to hinder, delay, or defraud. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.005(a)(1), and the Trustee may avoid and recover the Avoidable Transfers from Defendant Wego.

35. Debtor QAI made the Avoidable Transfers to Defendant Wego without receiving reasonably equivalent value in exchange for the Transfers. Additionally, when Debtor QAI made the Avoidable Transfers for the benefit of Defendant Wego, it (1) was engaged or was about to engage in a business or transaction for which the remaining assets of Debtor QAI were unreasonably small in relation to the business or transaction, or (2) intended to incur, or believed or reasonably should have believed that Debtor QAI would incur, debts beyond its ability to pay as they became due. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.005(a)(2), and the Trustee may avoid and recover the Avoidable Transfers from Defendant Wego.

36. Debtor QAI made the Avoidable Transfers to the transferees for the benefit of Defendant Wego and Anchor (1) without receiving reasonably equivalent value in exchange for the Avoidable Transfers, and (2) Debtor QAI either was insolvent when it made the Avoidable Transfers, or it became insolvent, partially as a result of the Avoidable Transfers. At the time of the Avoidable Transfers, (1) Debtor QAI's debts exceeded the fair valuation of all its assets, and (2) Debtor QAI was generally not paying its debts as they became due. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.006(a), and the Trustee may avoid and recover the Avoidable Transfers.

37. Because the Avoidable Transfers were fraudulent under TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(1) and (2) and 24.006(a), the Trustee may avoid the Avoidable Transfers to Defendant Wego under TEX. BUS. & COM. CODE ANN. § 24.008. Pursuant to 11 U.S.C. § 550(a) and TEX. BUS. & COM. CODE ANN. § 24.008, the Trustee may recover from Defendant Wego the value of the Avoidable Transfers.

## CONSTRUCTIVE TRUST

38. Once an entity becomes insolvent and can no longer continue normal business operations, its assets become a trust fund for the benefit of all creditors. *Tigrett v. Pointer*, 580 S.W.2d 375, 383 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.). Any assets that are transferred to or for the benefit of an officer, director, or owner are held in a constructive trust. *Southwest Livestock & Trading Co. v. Dooley*, 884 S.W.2d 443, 444 (Tex. App.—San Antonio 1994, writ denied); *Donovan v. Rankin*, 768 S.W.2d 443, 444 (Tex. App.—Houston [1st Dist.] 1989, writ denied). The Trustee requests that a constructive trust be imposed against all Avoidable Transfers made to Defendant Wego.

## TURNOVER OF PAYMENTS UNDER 11 U.S.C. § 542

39. All of the Avoidable Transfers made to Defendant Wego are property of the Bankruptcy Estate. The Avoidable Transfers are in a known amount. The Trustee seeks a judgment requiring the turnover of all Avoidable Transfers and all proceeds derived therefrom pursuant to 11 U.S.C. § 542.

## ATTORNEYS' FEES

40. The Trustee requests an award of his reasonable attorneys' fees and costs pursuant to TEX. BUS. & COM. CODE ANN. § 24.013 and all other applicable law.

## PRE- AND POST-JUDGMENT INTEREST

41. The Trustee seeks pre- and post-judgment interest on his recovery at the maximum amount allowable by law.

## PRAYER

42. Accordingly, the Trustee requests the entry of a judgment against Defendant Wego Chemical LLC consistent with the above-stated causes of action, including all actual damages,

turnover, the imposition of a constructive trust, attorneys' fees and costs, pre- and post- judgment interest, and all such other and further relief to which the Trustee may be justly entitled.

Dated: May 24, 2022			Respectfully submitted

McDowell Hetherington LLP

By: */s/ Nicholas R. Lawson*
Nicholas R. Lawson
Texas Bar No. 24083367
Avi Moshenberg
Texas Bar No. 24083532
Matthew Caldwell
Texas Bar No. 24107722
McDowell Hetherington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
P: 713-337-5580
F: 713-337-8850
E: Nick.Lawson@mhllp.com
   Avi.Moshenberg@mhllp.com
   Matthew.Caldwell@mhllp.com

***COUNSEL FOR CHRISTOPHER R. MURRAY, CHAPTER 7 TRUSTEE***